UNITED STATES DISTRICT COURT

THE DISTRICT OF COLUMBIA

**FILED**

JUN 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WILLIAM SHORTER, JR.
R428-63083
            Plaintiff
F m cnt
P.o.oo X14800
lexington Ky 4-0512
                vs
HARLEY LAPIN; HARRELL WATTS;
K.M. WHITE; DENISE M. GOTTLIEB;
JOSEPH M. BROOKS; JOHN DOE 1,
DOCTOR; JOHN DOE 2, WARDEN; Each
sued in individual and official capa-
city.  JOHN DOE 3, PHYSICIANS
ASSISTANT; JOHN DOE 4, UNIT
OFFICER; JOHN DOE 5, UNIT MANAGER,
JOHN DOE 6, CASE MANAGER; sued in
individual capacity JOHN DOE 7,
HEART DOCTOR; JOHN DOE 8, HEALTH
SERVICES ADMINISTRATOR; JOHN DOE 9,
ASSISTANT HEALTH SERVICES ADMINIS-
TRATOR, sued in their individual
and official capacities, THE UNITED
STATES FEDERAL BUREAU of PRISONS,
as a government agency.
                Defendants

CASE NUMBER  1:05CV01203

JUDGE: Reggie B. Walton

DECK TYPE: Pro se General Civil

DATE STAMP: 06/20/2005

COMPLAINT

JURY TRIAL DEMANDED

Civil Action No.: _____

JURY ACTION

## CIVIL RIGHTS COMPLAINT AND

## FEDERAL TORT CLAIM SUIT

COMES NOW the Plaintiff, William Shorter, Jr., pro se, and

in forma pauperis and complains against the named defendants as

follows:

## PRELIMINARY STATEMENT

This is a Civil Rights Complaint pursuant to the holdings in

Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403

**RECEIVED**

JUN - 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

U.S. 388, 91 S.Ct. 1999, and a Federal Tort Claim Act suit brought by a federal prisoner alleging, inter alia, violations of the Eighth Amendment's protection against cruel and unusual punishment; violations of the Equal Protection rights secured by virtue of the Fifth Amendment and violation of the 5th Amendment Due Process; in addition, violations of plaintiff's rights to be free from injury and/or negligence and medical deliberate indifference under the Federal Tort Claims Act ("FTCA").

Plaintiff seeks Nominal, Compensatory, and Punitive damages, declaratory judgment relief, injunctive relief, attorney fees, and all costs associated with bringing and maintaining this action.

## JURISDICTION AND VENUE

1.   The court has jurisdiction over the plaintiff's claims of violations of federal constitutional rights pursuant to 42 USC §§ 1331(a) and 1343.

2.   The court has further jurisdiction pursuant to the holdings in Bivens, supra; Article III, § 2, C i.1, and the 1st, 5th, and 8th Amendments of the U.S. Constitution, and also 28 USC §§ 1346(b) and 2671-80.

3.   Venue is proper pursuant to 28 USC § 1391.  The primary defendant, The Bureau of Prisons (BOP) is located in Washington, DC. Fifteen defendants are located in the Elkton, Ohio area.  Inasmuch as some of the defendants are located beyond this court's 100 mile territorial jurisdiction; the plaintiff avers jurisdiction is proper pursuant to 28 USC § 1332 Diversity Jurisdiction.  Claims

against the diversity defendants exceed the minimum amount re-
quired by the statute.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.    Pursuant to the prison Litigation Reform Act (PLRA), 42
USC § 1997(e)(a); plaintiff represents that he has completed all
remedies, within the meaning of the statute, and copies of these
remedies are attached as Exhibits 1-a through 1-j.

5.    Plaintiff, William Shorter, Jr., inmate number 42863-083
is presently incarcerated at the Federal Medical Center, P.O. Box
14500, HCU, Lexington, Kentucky 40512-4500.  At times relevant to
the matters complained of herein, the plaintiff was incarcerated
at the Federal Correctional Institute, P.O. Box 10, Elkton, Ohio
44415.  Plaintiff is a citizen of the United States, born on Sep-
tember 7, 1946, in Washington, DC.  Plaintiff retired from the
United States Army after three combat tour duties with a service
connected medical disability.  Plaintiff is a decorated Vietnam
veteran with extensive military education.  He has a 100% disabil-
ity from the Veterans Administration and a special housing grant
for his medical needs.

## PARTIES

6.    Defendant Harley Lappin, Director of the Federal Bureau
of Prisons (FBPO), whose work address is 320 First Street, NW,
Washington, DC 20535, is hereby sued in his individual and official

-3-

capacities.

7.    Defendant Harrell Watts, National Administrative Remedy Coordinator, FBOP, whose work address is 320 First Street, NW, Washington, DC 20535, is hereby sued in his individual and official capacities.

8.    Defendant K.M. White, Mid-Atlantic Regional Director for FBOP, whose work address is 10010 Junction Drive, Suite 100-N, Annapolis Junction, Maryland 20701, is hereby sued in his individual and official capacities.

9.    Defendant Denise M. Gottlieb, Mid-Atlantic Region Administrative Remedy Clerk, FBOP, whose work address is 10010 Junction Drive, Suite 100-N, Annapolis, Maryland 20701, is hereby sued in her individual and official capacities.

10.    Defendant Joseph M. Brooks, Warden, Federal Correctional Institute (FCI), whose work address is P.O. Box 10, Elkton, Ohio 44415, is hereby sued in his individual and official capacities.

11.    Defendant John Doe 1 is a doctor employed at FCI Elkton, whose name is presently unknown to plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his/her individual and official capacities.  For purpose of identification this defendant would be the assigned chronic care physician assigned to my care.

12.    Defendant John Doe 2 is a warden at FCI Elkton, whose name is presently unknown to plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his/her individual capacity.

-4-

13. Defendant John Doe 3 is a Physician's Assistant at FCI Elkton, whose name is presently unknown to plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his individual capacity. For purpose of identification, this defendant would have seen the plaintiff in the Elkton Clinic at approximately 10:00 AM on August 13, 2002.

14. Defendant John Doe 4 is a Corrections Officer at FCI Elkton, whose name is presently unknown to plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his individual capacity. For the purpose of identification this defendant would have been the housing unit officer on the plaintiff's housing unit at approximately 10:00 AM on August 13, 2002, and would be identified in the unit log for that date and time.

15. Defendant John Doe 5 is a Unit Manager at FCI Elkton, whose name is presently unknown to the plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his individual capacity. For purpose of identification the defendant would have been the Unit Manager of the plaintiff's housing unit on August 13, 2002.

16. Defendant John Doe 6 is a Case Manager at FCI Elkton, whose name is presently unknown to the plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his individual capacity. For purpose of identification the defendant would have been the Case Manager for the plaintiff's case on August 13, 2002.

-5-

17. Defendant John Doe 7 is a Heart Doctor providing services to FCI Elkton, whose name is presently unknown to the plaintiff and is hereby sued in his individual and official capacities.

18. Defendant John Doe 8 is the Health Services Administrator at FCI Elkton, whose name is presently unknown to the plaintiff, whose address is P.O. Box 10, Elkton, Ohio 44415. This defendant is responsible for ensuring the provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation. The defendant is sued in his/her individual and official capacities.

19. Defendant John Doe 9 is the Assistant Health Services Administrator at FCI Elkton, who name is presently unknown to the plaintiff, whose work address is P.O. Box 10, Elkton, Ohio 44415, and is hereby sued in his/her individual and official capacities.

20. All defendants have acted, and continue to act, under color of Federal Law at all times relevant to this complaint.

21. Defendant Federal Bureau of Prisons is a governmental agency under the United States Department of Justice, whose address is 320 First Street, NW, Washington, DC 20535, and is sued in its official capacity. The official duty of the Federal Bureau of Prisons is:

> "(2) provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise:
> (3) provide for the protection, instruction and discipline of all persons charged with or convicted

of offenses against the United States." See 18 USC
§ 4042.

## PREVIOUS LAWSUITS

22. The plaintiff has not commenced any other lawsuits in
any state or federal court arising out of the same facts and cir-
cumstances set forth herein or otherwise related to the conditions
of plaintiff's confinement.

23. The plaintiff has sought post conviction relief pursuant
to 28 USC §§ 2255 and 2244; however, those matters bear no rela-
tionship or similar facts or claims as set forth herein.

## FACTS

24. On August 13, 2002, at approximately 10:00 AM, plain-
tiff approached defendant John Doe 4, who was the correctional
officer on duty in his housing unit, complaining of severe chest
pain and that he was a heart patient and needed to see a doctor
at once.

25. Defendant John Doe 4, Correctional Officer, called the
prison medical department and advised medical personnel of the
problem, and then the officer released plaintiff from the housing
unit to go to medical. Defendant John Doe 4 also released inmate
Alvin Simmons from the unit to assist plaintiff in getting to the
medical department.

26. On information and belief the FBOP procedures and stand-
ing post orders require that when a prisoner advises a correctional

officer of a medical emergency, that officer is to record the event in the green, bound post log maintained for that post. Defendant John Doe 4 had this obligation.

27.   Upon arrival at the medical department, plaintiff was interviewed by Defendant John Doe 3, the Physician's Assistant (PA).  Plaintiff advised the PA that he was a heart patient in severe pain and, further, advised that he needed to be seen by the doctor.

28.   Defendant John Doe 3 attempted to take plaintiff's blood pressure, but advised plaintiff that he could not obtain a reading because the pressure was "too high."

29.   Defendant John Doe 3 instructed plaintiff to return to his unit and lie down and advise the unit officer if the problem worsened.

30.   Plaintiff informed Defendant John Doe 3, the PA, that he had taken five Nitroglycerin tablets with no effect on the pain, and attempted to demand to be seen by a doctor.  Plaintiff continued to plead to be seen by a doctor.

31.   At the time of these events, plaintiff was in fear for his life.

32.   Defendant John Doe 3, the PA, ordered plaintiff and inmate Simmons to return to the housing unit as instructed.

33.   Defendant John Doe 3, the PA, had a specific obligation to provide the plaintiff with due diligent medical care commensurate with community standards.

34. On information and belief the FBOP maintains specific written medical protocols setting forth the specific policies and procedures a PA is supposed to follow when responding to circumstances such as are set forth here, which procedures, at a minimum, require the attending PA to obtain an EKG on the prisoner before determining any next step or procedure or action.

35. Defendant John Doe 3, the PA, made a conscious decision to not comply with such protocols in this instance, making his actions negligent, below the reasonable community standards for professionals similarly situated, and rise to a level of deliberate indifference in not even allowing plaintiff the opportunity to be seen by a physician.

36. Upon return to the housing unit, plaintiff explained the entire series of events to Defendant John Doe 4, Unit Officer, and requested that he make a notation of the events in the green, bound post log book that he maintains on the housing unit.

37. Upon returning to plaintiff's room, the plaintiff lost all control of his bowels and body functions. The pain increased and the plaintiff was no longer able to help himself. Inmate Alvin Simmons found the plaintiff in this condition and argued and pled with John Doe 4, Unit Officer, to get the plaintiff emergency help.

38. At 3:00 PM on August 13, 2002, Defendant John Doe 4, Unit Officer, released plaintiff and Inmate Simmons to return to the medical department. During the entire five hour period, from 10:00 AM until 3:00 PM, plaintiff was unable to receive any medical

-9-

care or assistance despite many requests and extremely severe chest pains.

39.  While in the medical department, defendant John Doe 7, Heart Doctor, worked on plaintiff with several other people; this continued for a long period.

40.  Plaintiff was finally transported to an outside hospital. Acting on policies established by John Doe 2, Warden FCI Elkton, the prison placed plaintiff in steel handcuffs, steel waist chain and steel ankle shackles. The ambulance personnel informed escorting personnel that the restraints had to be switched to plastic in the event electronic defribillation by electric paddles was required.

41.  The cardiac specialist at the hospital confirmed that plaintiff had two serious heart attacks in a short period of time (hours). The specialist advised that the two heart attacks caused severe non-reversible damage to the heart tissue and there was nothing to do to reverse the damage. The specialist further informed plaintiff that he was required to have an arterial stent installed in a major artery to assist circulation

42.  The specialist further opined that had the first attack been properly treated immediately, the second attack, possibly, could have been prevented or lessened in severity.

43.  On August 15, 2002, plaintiff was discharged from the hospital and was returned to the prison without incident.

44.  From the time of these events to the present, plaintiff

has been in a state of distress and fear, considering the fact
that he might have another attack and might fall prey, again, to
such negligence and deliberate indifference.

45.  Sometime subsequent to August 15, 2002, the plaintiff
was transferred to the Federal Correctional Complex at Petersburg,
VA.

46.  From the period of August 15, 2002, through and includ-
ing July 2003, the plaintiff experienced extreme irregularities
in medical care, both from FCI Elkton and then at FCC Petersburg.
These irregularities included, but were not limited to; limited
follow-up care, irregular filling of medical prescriptions, im-
proper assistance and equipment, such as failing to provide proper
wheelchair, back brace, and other life assising equipment, and
poor outside consultation and follow-up of cardiac doctors and
post even follow-up testing.

47.  On July 30, 2003, plaintiff filed an "administrative
Remedy Attempt at informal resolution," in which he reported the
Elkton incident and sought damages.  Plaintiff also complained
of "chest pain, numbness in arm and face, shortness of breath,
and headaches."  Plaintiff further complained that he was not
getting the medications when due.  Finally, plaintiff complained
of writing numerous cop-outs concerning these issues to personnel
with no results.  [Exhibit 1-A].

48.  On August 6, 2003, a correctional counselor answered
the Informal Resolution by stating the he/she spoke with the

-11-

medical staff and they stated that "all your medical concerns are
addressed ... if you run out of medicine, go to sick call."
[Exhibit 1-B].

49. On August 7, 2003, plaintiff submitted a Remedy BP-9
to defendant Joseph M. Brooks - Warden - Petersburg [Exhibit 1-C].
In the BP-9, the plaintiff continued to complain about poor
medical care, sought damages for prior care, and sought needed
items, such as wheelchair, smoke-free climate, handicap toilet
availability, and proper care.

50. Defendant Joseph M. Brooks, Warden at Petersburg, res-
ponded in writing that plaintiff's needs were under control, he
would be evaluated for a wheel chair, he should to sick call for
refills of medication, and that monetary damages could not occur
as a result of a BP-9 Remedy and, finally, suggested the peti-
tioner could tell on the smokers for smoking in a non-smoking
unit. [Exhibit 1-E].

51. On September 22, 2003, plaintiff appealed the Warden's
response to the Region (a BP-10) and restated the same basic com-
plaints and examples of care below the community standard and,
further, showed the FBOP's total deliberate indifference to the
providing of a minimum requisite level of care. [Exhibits 1-F
and 1-G].

52. On November 3, 2003, defendant K.M. White responded to
the petitioner's complaint and denied relief indicating that medi-
cal testing and reevaluation was under way [Exhibit 1-H].

-12-

Defendant White also suggested plaintiff should file a tort claim.

53.  On November 7, 2003, plaintiff appealed the Region BP-10 answer to the Central Office.  Plaintiff realleged all prior complaints and advised the Central Office the tests, exams, and reevaluations had not occurred as promised and petitioner pled to see an independent doctor for evaluation and treatment. [Exhibit 1-I].

54.  On December 15, 2003, defendant Harrell Watts responded to the plaintiff's complaint.  In said response, defendant Watts opined the plaintiff was getting treatment in accordance with Bureau Policy.  The response again encouraged the plaintiff to tell unit staff of smoking violations.  While the response functioned as a denial, it was characterized as for informational purposes only.  [Exhibit 1-J].

55.  On information and belief, when a prisoner files a grievance or administrative remedy, the remedy staff calls the matter to the attention of those individuals responsible for the matter that the grievance or remedy concerns.

56.  On information and belief, when an employee of the FBOP is responsible for writing a response to a remedy, the response is to be truth, factual, relevant, and intended to resolve the problem and accurately and truthfully reflect the record of circumstances involved.

57.  On information and belief, defendants Brooks, White,

-13-

and Watts are salaried administrative executives, considered to be
a ranking of Warden, or higher, and each of these defendants are
considered to be responsible to the FBOP and to the honest, truth-
ful, and legal resolution of all situations and are presumed in
an oversight capacity to represent the inmates rights and protec-
tions from the errors, omissions, and deliberate misdeeds of FBOP
employees under their supervision.

58.   While in the clinic for the first 10:00 AM visit, the
Plaintiff made every effort to persuade and convince defendant
John Doe 3, the PA, that he should be seen by defendant John Doe
1 - plaintiff's medical doctor.  Defendant John Doe 3 stated the
rules established by defendant John Doe 8, the Health Services
Administrator (HSA), and defendant John Doe 9, the Assistant Health
Services Administrator (AHSA) did not permit him to allow the
plaintiff to see defendant John Doe 1 - Medical Doctor, unless he
believed there was a serious medical emergency.

59.   On information and belief, the policies set forth above
by defendants John Does 1, 3, 8, and 9, are in fact not the poli-
cies of the FBOP.

60.   On information and belief, a prisoner claiming of se-
vere chest pain with accelerated blood pressure is in fact con-
sidered a "serious medical emergency."

61.   On information and belief, defendant John Doe 8 (HSA)
and defendant John Doe 9 (AHSA) are each responsible for the im-
plementation of FBOP policy and are further responsible for the

supervision of medical personnel within the facility and the
thorough investigation of claims of inadequate, improper, or
otherwise deficient medical care.

62. On information and belief, defendant John Doe 2 – Warden,
is the top executive officer of FCI Elkton and as such is respon-
sible for the acts and omissions of those staff below him.

63. Plaintiff sought assistance and intervention from de-
fendant John Doe 5, the Unit Manager, and John Doe 6, the Case
Manager, requesting that each of them take steps to provide the
plaintiff with adequate follow-up care that is commensurate with
community standards of health care for plaintiff's condition.

64. John Doe defendants 5 and 6 took no steps to intervene
on plaintiff's behalf, despite multiple requests.

65. The FBOP Medical Bill of Rights states that a prisoner
may enlist any staff member(s) to intervene and ensure proper
healthcare.

66. On June 19, 2004, plaintiff filed a 1.5 million dollar
tort claim, number TRT-NER-2004-04204, essentially claiming mon-
etary damages for damage. No settlement was offered and the claim
was denied on December 10, 2004, stating there was no evidence of
negligence on the part of the FBOP. [Tort claim is attached as
Exhibit 2A, the denial is attached as Exhibit 2B].

67. Plaintiff re-alleges his tort claim and incorporates
same herein as though set out fully and states this claim against
the United States is timely in that it is made within six (6)
months of the denial of the tort claim.

68.  Defendant John Doe 1 - Doctor; John Doe 7 - Heart Doctor; John Doe 8 - HSA; and John Doe 9 - AHSA are responsible for medical care generally and for arranging for specialized medical care outside the prison.

69.  All defendants had varying degrees of responsibility toward the care and follow-up care of this plaintiff.  All defendants acted or failed to act with deliberate indifference toward the plaintiff's needs.

<u>CLAIMS FOR RELIEF</u>

70.  The actions and omissions of John Doe 1 - Doctor, in his failure to examine the plaintiff at 10:00 AM on the morning of August 13, 2002, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution and resulted in substantial and permanent impairment to plaintiff's health and life.

71.  Defendants Harley Lappin, Harrell Watts, K.M. White, Denise Gottlieb, Joseph M. Brooks, John Doe 2, Elkton Warden, John Doe 7, heart doctor, John Doe 8, HSA, John Doe 9, AHSA, each had a responsibility and duty to each and every prisoner under their care to provide a level of medical care commensurate with community standards, as well as a duty to investigate any claims or reports to the contrary.  Each of these defendants were notified as to the circumstances hereto and each were notified as to the need for proper follow-up care and each were indifferent to the

-16-

problems and would instead certify plaintiff had received proper care.

72. The failure of defendants Lappin, Watts, White, Gottlieb, Brooks, John Doe 2, Warden; John Doe 8, HSA; John Doe 9, AHSA; John Doe 5, United Manager; and John Doe 6, Case Manager to start an investigation, to take disciplinary or other action to curb the known health care deficiencies by defendants John Doe 1, Doctor; John Doe 3, PA; John Doe 4, Officer; John Doe 7, heart doctor, constituted deliberate indifference, and contributed to and proximately caused the above described violation of Eighth Amendment rights and deliberate indifference.

73. The failure of defendant John Doe 1, Doctor; John Doe 3, PA; John Doe 4, Unit Officer to provide proper care; and the failure of John Doe 8, HSA and John Doe 9, AHSA, to provide proper protocols and supervision to insure against such negligence, constitutes the tort of negligence under the laws of the United States.

74. On information and belief, a portion of the problems complained of stem from the Policies of the FBOP which allow for the hiring of unlicensed medical practicioners with questionable backgrounds and many not even license eligible. This problem is further complicated by the absence of a binding legal definition of what "community standard of health care" is or isn't, thereby allowing impermissible decision and latitude.

## RELIEF REQUESTED

WHEREFORE, plaintiff requests that the court grant the following relief:

A.    Issue a declaratory judgment stating that:

    1.    The deficient medical care provided by defendants Doe 1, Doctor; Doe 3, PA; Doe 7, Heart Doctor; violated the plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted deliberate indifference and professional negligence.

    2.    Defendants Lappin, Watts, White, Gottlieb, Brooks, Doe 2, Warden; Doe 5, Unit Manager; Doe 6, Case Manager; Doe 8, HSA; Doe 9, AHSA; and defendant Federal Bureau of Prisons failed to take action when advised, failed to investigate, and failed to attempt to curb or correct the medical neglect and malpractice of prisoners and violated the plaintiff's rights under the 5th and 8th Amendments to the U.S. Constitution.

B.    Issue an injunction ordering prison officials at plaintiff's current prison of residence (not party to this action) to:

    1.    Immediately arrange for the plaintiff to be examined by an independent coronary/heart specialist

-18-

for a full evaluation of total damage and
to create a proper care and therapy plan to
correct damage or otherwise properly care
for plaintiff to the fullest extent of medi-
cal care.

2.    Carry out without delay the treatment directed
by said independent specialists.

C.    Award compensatory damages in the following amounts:

1.    One million five hundred thousand dollars,
jointly and severally, against defendants John
Does 1, unknown doctor; 2, unknown Warden; 3,
unknown PA; 4, unknown Unit Officer; 5, un-
known Unit Manager; 6, unknown Case Manager;
7, unknown heart doctor; 8, unknown HSA; 9,
unknown AHSA, for the physical, emotional in-
juries sustained as a result of the deliberate
indifference and negligence and their acts of
commission and omission leading to the plain-
tiff's condition.

2.    Two hundred fifty thousand dollars, severally,
against defendants Lappin, Watts, White,
Gottlieb, and Brooks.

3.    Ten million dollars against the Federal Bureau
of Prisons for its failure to insure the obli-
gations it had and has toward the safety and

-19-

and health of the plaintiff.

4.    All damages claimed as awardable under the
      Federal Tort Claim set forth in Exhibits
      2A & 2B.

D.    Two million five hundred thousand dollars, jointly and
severally, against all named defendants for their conduct set
forth in this complaint.

E.    Plaintiff seeks court costs and all expenses associated
with bringing and maintaining this action to be awarded, jointly
and severally, against all defendants.

F.    Award all proper and just attorney's fees; and

G.    Such other and further relief as this Honorable Court
may deem just and proper in the premises.

I, William Shorter, Jr., Plaintiff pro se, do declare under
penalties of perjury, 28 USC § 1746, that the foregoing is true
and correct to the best of my ability and knowledge.

Respectfully submitted,

Dated May 24th 2005

*William Shorter, Jr*
William Shorter, Jr
#
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

STATE OF KENTUCKY)

COUNTY OF FAYETTE)

The foregoing complaint was subscribed to before me on the
24th day of May 2005, by the above named inmate who provided
an official prison identification.

*Christine Mattingly Seymour*
Notary State at Large

exp 6/28/06

*Certified mail # 7099-3400-0000-7673-2423*